UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH HARMON,

       Plaintiff,                                Hon. Robert J. Jonker

v.                                                                Case No. 1:12-CV-1059

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 44 years of age on his alleged disability onset date. (Tr. 108). He successfully completed high school and worked previously as a construction worker. (Tr. 23). Plaintiff applied for benefits on January 7, 2009, alleging that he had been disabled since January 15, 2006, due to chronic obstructive pulmonary disease (COPD), asthma, depression, and back pain. (Tr. 108-10, 124). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 76-133). On December 14, 2010, Plaintiff appeared before ALJ Richard Kallsnick, with testimony being offered by Plaintiff and a vocational expert. (Tr. 32-51). In a written decision dated January 4, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 17-25). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 2-6). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On October 23, 2008, Plaintiff reported to the hospital complaining of "shortness of breath and cough with productive sputum of one week duration." (Tr. 198-201). The results of an EKG examination were "normal." (Tr. 201). X-rays of Plaintiff's chest revealed "hyperinflation changes consistent with chronic obstructive pulmonary disease," but "no inflamation or infiltrative

3

changes." (Tr. 196, 201). Plaintiff was admitted to the hospital to receive "respiratory therapy." (Tr. 196). Plaintiff's condition quickly improved and he was discharged from the hospital the following day. (Tr. 196-97).

Treatment notes dated January 6, 2009, indicate that Plaintiff was "having difficulties with his breathing," despite taking medication. (Tr. 294-95). Plaintiff was diagnosed with: (1) upper and lower respiratory disease with chronic sinusitis and nasal polyposis and (2) significant atopic disease[1] with pan-seasonal and perennial allergies and asthma. (Tr. 294).

On April 3, 2009, Plaintiff was admitted to the hospital by his treating physician Dr. John Gobel after experiencing "increasing shortness of breath and rash." (Tr. 309-10). Dr. Gobel determined that Plaintiff likely suffered an allergic reaction to a particular medication which he had recently been prescribed. (Tr. 309). The doctor, however, indicated that Plaintiff was also suffering from allergic bronchopulmonary aspergillosis[2] with bronchiectasis,[3] chronic sinusitis, otitis externa/media, and GERD. (Tr. 309). Plaintiff received respiratory treatment and was discharged home the following day. (Tr. 309-10).

---

[1] Atopic disorders involve "exaggerated immune responses to foreign antigens." *See* Overview of Allergy and Atopy, available at http://www.merckmanuals.com/professional/immunology_allergic_disorders/allergic_autoimmune_and_other_hypersensitivity_disorders/overview_of_allergy_and_atopy.html (last visited on March 10, 2014).

[2] Allergic bronchopulmonary aspergillosis refers to an "allergic or hypersensitive reaction" to the Aspergillus fungus. *See* Allergic Bronchopulmonary Aspergillosis, available at http://www.aaaai.org/conditions-and-treatments/related-conditions/allergic-bronchopulmonary-aspergillosis.aspx (last visited on March 10, 2014). Such a reaction to this fungus "is rare in people with normal immune systems" and "may damage the airways and result in permanent lung damage." *Id.*

[3] Bronchiectasis is a condition in which "the lungs' airways are abnormally stretched and widened." *See* Bronchiectasis, available at http://www.lung.org/lung-disease/bronchiectasis/ (last visited on March 10, 2014). This condition is "caused by mucus blockage. . .allowing bacteria to grow" which "leads to infection." *Id.*

On April 6, 2009, Plaintiff was admitted to the hospital after experiencing breathing difficulty. (Tr. 320-21). Dr. Gobel diagnosed Plaintiff with: (1) left lower lobe pneumonia, strep pneumonia isolated; (2) allergic bronchopulmonary aspergillosis with asthma; (3) bronchiectasis; (4) right otitis media; (5) rash, possibly due to a drug reaction; and (6) thrush. (Tr. 320). Plaintiff was discharged from the hospital on April 12, 2009. (Tr. 320-21).

On April 17, 2009, Plaintiff reported to the emergency room after experiencing "severe" dyspnea and "a severe cough productive of copious amounts of clear sputum." (Tr. 323). Plaintiff was diagnosed with acute exacerbation of COPD and discharged home after receiving treatment. (Tr. 323-27).

On February 9, 2010, Plaintiff was admitted to the hospital for treatment of left lower lobe pneumonia. (Tr. 381-82). Plaintiff was given various respiratory treatments and discharged from the hospital on February 12, 2010. (Tr. 381-82).

On June 1, 2010, Plaintiff was examined by Dr. Duane Smith. (Tr. 399-400). An examination revealed that Plaintiff was suffering from: (1) chronic inflammatory nasal polyposis and rhinosinusitis; (2) allergic rhinitis; and (3) bronchopulmonary aspergillosis. (Tr. 399-400).

On July 7, 2010, Plaintiff participated in an MRI examination of his brain the results of which revealed "extensive paranasal sinus disease." (Tr. 394-95). Treatment notes, dated the same day, however, reveal that Plaintiff was presently working as a "handyman." (Tr. 442).

On August 24, 2010, Dr. Gobel completed a report regarding Plaintiff's impairments and limitations. (Tr. 452-53). The doctor noted that he had been treating Plaintiff for "many" years and that Plaintiff presently suffered from: (1) chronic rhinosinusitis; (2) asthma; (3) COPD; (4) pneumonia; (5) Ig6 deficiency; (6) frequent infections; and (7) allergic bronchopulmonary

5

aspergillosis. (Tr. 452). With respect to Plaintiff's physical limitations, the doctor reported that Plaintiff could "occasionally" lift/carry 10 pounds. (Tr. 453). The doctor reported that Plaintiff could use both of his upper extremities to perform simple grasping, reaching, pushing/pulling, and fine manipulating activities, but that Plaintiff would unlikely be able to "do it for any length of time." (Tr. 453).

Treatment notes dated October 13, 2010, indicate that Plaintiff was suffering from: (1) narcolepsy,[4] which "is not very responsive" to medication; (2) moderately severe sleep apnea; and (3) restless leg syndrome. (Tr. 477).

On November 1, 2010, Plaintiff was examined by Dr. Julie Phillips. (Tr. 406-10). Following an examination, Plaintiff was diagnosed with: (1) obstructive sleep apnea, improved with use of a CPAP device; (2) narcolepsy with cataplexy, unchanged; (3) depression, improved with medication; (4) degenerative disc disease of the lumbosacral spine, unchanged; (5) chronic sinusitis, unchanged; (6) COPD, unchanged. (Tr. 408-09). Plaintiff's medication regimen was modified. (Tr. 409-10).

---

[4] Narcolepsy is "a neurological disorder that affects the control of sleep and wakefulness." *See* Narcolepsy, available at http://www.webmd.com/sleep-disorders/guide/narcolepsy (last visited on March 11, 2014). People with narcolepsy "experience excessive daytime sleepiness and intermittent, uncontrollable episodes of falling asleep during the daytime." Cataplexy is a symptom of narcolepsy which consists of "a sudden loss of muscle tone that leads to feelings of weakness and a loss of voluntary muscle control." It can cause symptoms "ranging from slurred speech to total body collapse, depending on the muscles involved, and is often triggered by intense emotions such as surprise, laughter, or anger." *Id.*

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[5] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[5] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from asthma and chronic obstructive pulmonary disease, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 19).

The ALJ next determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can occasionally lift/carry 20 pounds; (2) he can frequently lift/carry 10 pounds; (3) he can stand and/or walk for about six hours during an 8-hour workday; (4) he can sit for about six hours during an 8-hour workday; (5) he can push and/or pull on an unlimited basis; (6) he should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; and (7) he must avoid concentrated exposure to extreme cold, heat, and humidity. (Tr. 19). The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt

to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Julie Harvey.

The vocational expert testified that there existed approximately 155,800 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 48-50). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.  **The ALJ Properly Evaluated Plaintiff's Impairments**

Plaintiff asserts that he is entitled to relief because the ALJ failed to find that his narcolepsy was a severe impairment. At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Commissioner of Social Security*, 528 Fed. Appx. 425, 427 (6th Cir., May 22, 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments. . .does not constitute reversible error"); *Anthony v.*

9

*Astrue*, 266 Fed. Appx. 451, 457 (6th Cir., Feb. 22, 2008) (same); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th Cir., Nov. 9, 2007) (same).

Here, the ALJ determined that Plaintiff suffered from a severe impairment at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the medical evidence of record. While Plaintiff has been diagnosed with narcolepsy, the mere fact that he has been diagnosed with such does not necessarily lead to the conclusion that such constitutes a *severe* impairment. *See, e.g., McPhee v. Commissioner of Social Security*, 2013 WL 3224420 at *5 (E.D. Mich., June 25, 2013) ("a mere diagnosis does not equate to a 'severe' impairment or indicate how that impairment may or may not manifest into work-related functional limitations").

Thus, even if it is assumed that the ALJ erred in failing to find that Plaintiff's narcolepsy constituted a severe impairment, such does not call into question the substantiality of the evidence supporting the ALJ's decision. The ALJ considered the entire record in this matter and even made mention of Plaintiff's narcolepsy in his analysis of the record. There is no indication in the record that Plaintiff's narcolepsy constitutes a severe impairment or imposes on him any limitations which are inconsistent with his RFC. This argument is, therefore, rejected. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep.

16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

II. **The ALJ's RFC is Not Supported by Substantial Evidence**

As previously noted, the ALJ determined that Plaintiff retained the ability to perform a range of light work, subject to various limitations including the need to avoid various environmental irritants. Plaintiff asserts that he is entitled to relief because the ALJ's RFC determination is not supported by substantial evidence.

In support of his RFC finding, the ALJ relied on two conclusions, neither of which survive scrutiny. First, the ALJ found that "the record does not contain any opinions from treating or examining physicians indicating that [Plaintiff] is disabled or that he even has limitations greater than those determined in this decision." (Tr. 22-23). This statement is simply inaccurate. As previously noted, Dr. Gobel, one of Plaintiff's treating physicians, concluded that Plaintiff was impaired to an extent far greater than that recognized by the ALJ. (Tr. 452-53). To the extent, therefore, that the ALJ found support for his conclusion in the belief that none of Plaintiff's care providers offered a differing opinion such belief is misplaced.

The ALJ also supported his RFC determination by reference to Plaintiff's allegedly limited daily activities. At the administrative hearing, Plaintiff testified that due to his breathing and respiratory impairments, as well as his other impairments, his ability to consistently engage in normal activities was greatly diminished. (Tr. 35-47). As support for his RFC determination, the ALJ observed that Plaintiff's "allegedly limited daily activities cannot be objectively verified with

11

any reasonable degree of certainty." (Tr. 23). This is an odd statement as such is always the case when a claimant is describing his or her daily activities. However, the ALJ further stated that "even if [Plaintiff's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [Plaintiff's] medical condition." (Tr. 23). Aside from the fact that the ALJ appears to be "playing doctor," the ALJ's conclusion is directly contradicted by Dr. Gobel's opinion that Plaintiff's impairments do, in fact, limit him to an extent greater than that recognized by the ALJ. That the ALJ completely ignored Dr. Gobel's opinion calls into doubt the ALJ's conclusion.

In sum, the medical evidence suggests that Plaintiff is limited to an extent beyond that recognized by the ALJ. Moreover, the rationale articulated by the ALJ in support of his RFC is not supported by substantial evidence. Accordingly, the undersigned finds that the ALJ's RFC determination is not supported by substantial evidence.

### III. The ALJ Failed to Properly Evaluate the Opinion Evidence

As noted above, Dr. Gobel offered an opinion regarding Plaintiff's ability to perform work activities. While the ALJ recognized that Plaintiff suffers from certain physical limitations, Dr. Gobel opined that Plaintiff is even more limited. Plaintiff argues that the ALJ failed to articulate sufficient reasons for discounting Dr. Gobel's opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not

12

inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

There is no question that Dr. Gobel qualifies as one of Plaintiff's treating physicians. Nevertheless, the ALJ offered no rationale for discounting Dr. Gobel's opinion, but instead simply ignored it. As the Sixth Circuit has made clear, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale for doing so. *See Wilson*, 378 F.3d at 544-47. As the *Wilson* court held:

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion.
>
> Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case

14

record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* at 544 (internal citations omitted).

As the *Wilson* court further held, failure to comply with this requirement is not subject to harmless error analysis. *Id.* at 546-47. As the court expressly stated:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. . .To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Id.* at 546 (internal citations omitted).

The ALJ offered absolutely no reason for disregarding Dr. Gobel's opinion. As a result, the Court simply cannot assess whether the ALJ's determination to disregard Dr. Gobel's opinion is supported by substantial evidence. In light of the fact that Dr. Gobel's opinion is inconsistent with the ALJ's RFC determination, the ALJ's failure is not harmless. The ALJ's failure clearly violates the principle articulated in *Wilson* and renders his decision invalid.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist *compelling* evidence that Plaintiff is disabled. Evaluation of Plaintiff's

claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The undersigned recommends, therefore, that the Commissioner's be reversed and this matter remanded for further factual findings.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: March 12, 2014  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge